IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAYREL BILLINGSLEY,

    Petitioner,

    v.                                      CASE NO. 2:04-CV-304
                                          CRIM. NO. 2:04-CR-160
                                          JUDGE FROST
                                          MAGISTRATE JUDGE KING

UNITED STATES OF AMERICA,

    Respondent.

## REPORT AND RECOMMENDATION

Petitioner, federal prisoner, brings this motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the petition, as amended, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURAL HISTORY

Petitioner's underlying criminal convictions result from his April 21, 2005, guilty plea, pursuant to the terms of his negotiated plea agreement, to operating a continuing criminal enterprise in violation of 21 U.S.C. §848, conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h), and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§922(g)(1), 924(a)(2). *See* Doc. Nos. 31, 33. On September 28, 2005, petitioner was sentenced to 120 months on count 2, to 240 months on count 71, and to 300

months on count 81, such sentences to be served concurrently with each other. Doc. No. 42. On January 30, 2007, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's sentence. Doc. No. 70. On July 16, 2007, this Court reduced petitioner's sentence by seven years pursuant to the government's request under Rule 35 of the Federal Rules of Criminal Procedure. Doc. No. 80.

On February 13, 2008, petitioner filed the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. *See* Doc. Nos. 87, 91.[1] He asserts the following claims:

> 1. Defendant did not receive effective assistance of counsel in preparing for his defense or negotiating a plea.
>
> The record is clear that unfortunately the defendant had numerous court appointed lawyers throughout the trial, plea and sentencing phases of his case. He experienced great difficulty in communicating with any of them and feels they did not properly plan the defense of his case. Nor did they assist him appropriately in his plea negotiations.
>
> 2. The defendant did not enter a knowing and voluntary plea.
>
> During the course of the plea negotiations, representations were made to the defendant concerning the fact that he would receive a significantly reduced sentence if he plead guilty and cooperated. The defendant relied upon these promises in entering a plea and providing extensive cooperation. Although he did ultimately receive a minimal reduction in his sentence, it was not anywhere near what he was lead to believe he would receive.

---

[1] Petitioner actually filed a motion to extend the time to file his §2255 petition, *see* Doc. No. 81; however, the Court construed his motion as a §2255 petition and granted him 60 days to supplement the petition. Doc. No. 84.

> 3. The promises made to the defendant to induce his plea were not kept.
>
> As set forth... above, the defendant provided extensive cooperation relying upon promises made to him that his sentence would be substantially reduced. Although a small reduction in sentence was received, it was not what he had been promised and lead to believe would happen.

It is the position of the respondent that these claims are without merit.

## MERITS

Petitioner initially asserts that he "was ignorant of the consequences of pleading guilty" and, because of inadequate advice by his attorney, his guilty plea was not knowing, intelligent, or voluntary. *See Motion to Supplement §2255 Petition*, at 10. Petitioner, however, appears to have withdrawn his claim that his guilty plea was invalid; he states that he no longer disputes the validity of his guilty plea. *See Reply*, Doc. No. 96. Instead, petitioner requests "a fair sentence." *Id*. Petitioner alleges that he agreed to be held responsible for 1 kilogram of heroin and an offense level of 32 under the United States Sentencing Guidelines. *Id*. Additionally, he asserts that he was improperly held accountable for the firearm, because he did not use the gun found in his home in conjunction with the indicted offense. He also asserts that he was improperly convicted of operating a continuing criminal enterprise; his attorney, he charges, never explained to him the elements of this offense. Petitioner further asserts that his attorney assured him that "he could receive a sentence of twelve years total." *Reply*, at 2.

> Petitioner was forced into shutting up and accepting the plea

> agreement, but the plea agreement... did not represent the time [defense attorney] Diane Menashe said he could get. The petitioner does not dispute the validity of that plea. He is guilty and has accepted responsibility for his conduct, but he has been sentenced for conduct that he was not responsible for, specifically a Continuing Criminal Enterprise, and without the firearm enhancement. The petitioner is merely asking for specific performance of the deal he thought he was agreeing to, which was a sentence without the Continuing Criminal Enterprise, and without the firearm enhancement.

*Reply*, at 3. Petitioner also asserts that his prior criminal history score was improperly calculated. He asks that the Court re-sentence him to 118 months imprisonment. *Id.* The record does not, however, reflect any basis for relief.

On April 19, 2005, petitioner signed a guilty plea agreement indicating, *inter alia*, that he understood that he faced a maximum term of twenty years to life on count 81 of the superseding indictment, twenty years on count 71 and ten years on count two. *See Plea Agreement,* Doc. No. 31. The government agreed to dismiss the remaining charges, *i.e.*, counts 1, 5-70, and 72-80. The parties also agreed that petitioner's relevant conduct under the United States Sentencing Guidelines involved more than three kilograms of heroin but less than ten kilograms, that pursuant to U.S.S.G. §3B1.1 and §3B1.2 he had a supervisory role over at least five individuals and that he would receive a three level decrease in his recommended guideline sentence for acceptance of responsibility and timely notifying the authorities of his intention to plead guilty. *See id.* It was the government's position that, pursuant to U.S.S.G. §2D1.1(b), petitioner possessed a firearm in connection with his drug trafficking enterprise, resulting in a two level increase in his recommended guideline

4

sentence; however, petitioner reserved the right to contest that enhancement at sentencing. Petitioner waived the right to have that particular issue decided by a jury. *Id.*

At the time of his guilty plea, petitioner indicated that he understood the nature of the charges against him, had discussed these charges with his attorney and had been fully informed of the facts and circumstances of his case. *Transcript, Guilty Plea*, at 7. He was satisfied with his attorney's advice and representation. *Id.*, at 8. The Court explicitly advised petitioner of the elements of the offenses charged, including the forfeiture counts. *Id.*, at 9-11. Petitioner at all times indicated that he understood. He understood the maximum possible penalties and the Court reviewed those penalties with him. *Id.*, at 11-13. He understood that the Court could impose maximum consecutive sentences, *id.*, at 13-14, and that his sentence could be more or less severe than his recommended guideline sentence. *Id.*, at 18. The Court advised petitioner of all of the rights waived by virtue of his guilty pleas, and petitioner at all times indicated that he understood. *Id.*, at 19-20. He asked no questions. The prosecutor summarized the terms of petitioner's guilty plea agreement. *Id.*, at 21-23. Petitioner agreed with those stated terms. *Id.*, at 24-26. The Court advised petitioner that his mandatory minimum term of incarceration would be twenty years. *Id.*, at 26. Petitioner indicated that he understood. *Id.* He expressly denied that any additional promises or threats had been made to induce his guilty plea. *Id.*, at 28-29.

> COURT: Do you understand that any recommendation of sentence agreed to by your counsel and the government or any agreement by the government not to oppose the sentence requested by your attorney is not binding upon the Court and that you might on the basis of your guilty plea receive a more

> severe sentence than requested or recommended?
>
> DEFENDANT: Yes, your Honor.
>
> COURT: Do you understand that if I do impose a more severe sentence, you will still be bound by your pleas of guilty and you will have no right to withdraw those pleas of guilty?
>
> DEFENDANT: Yes, your Honor.

*Id.*, at 28. Special Agent Robert Bogner summarized the facts of the case as follows:

> This investigation began in late 2002/early 2003 after investigators encountered several different individuals trafficking in heroin in the Columbus, Ohio area, as well as an increase in the use of heroin of individuals in communities in and around the Columbus, Ohio area. Investigating agents from the Columbus, Ohio Division of Police, Fairfield County Major Crimes Unit, Drug Enforcement Administration and the Internal Revenue Service began sharing information and soon came to realize that many of these incidents were related to the same group of people.
>
> One of the individuals identified as a significant distributor of heroin at that time was a man by the name of Dayrel Billingsley. Investigating agents began conducting surveillance of Billingsley and his associates. They also attempted to make undercover purchases of heroin from individuals believed to be selling heroin supplied by Billingsley. After several traffic stops and controlled buys, the individuals selling the heroin were interviewed. Several of these individuals identified Billingsley as the supplier of heroin in the Columbus, Ohio area.
>
> In April of 2004, investigating agents were contacted by FBI agents in Richmond, Virginia, who were intercepting telephone conversations of a heroin trafficker by the name of Glenn Sweeting through a court-ordered wiretap. Richmond agents had intercepted calls between Sweeting and a Columbus Ohio telephone, subscribed in the name of Lance Robinson. Investigators in Columbus soon learned that Lance

Robinson was an alias name utilized by the defendant, Kevin Grant. In the intercepted calls, Grant and Sweeting discussed their respective heroin trafficking businesses in Columbus and Richmond. They also identified another Columbus associate, Dayrel Billingsley, who had his own heroin distribution network in the Columbus area. Grant and Sweeting discussed several of their sources of supply for heroin in New York -- including individuals they referred to as Forty, Cribby and Homey.

Utilizing information obtained from the Sweeting wiretap initially in June 2004, investigators obtained wiretaps on two cellular telephones in the Columbus, Ohio area. One was used by Kevin Grant and one was used by Kevin Neal. Through monitoring of those cellular telephones, investigators learned both Grant and Neal had had their own heroin distribution networks in Columbus. However, the monitoring and related investigation revealed these distribution networks were interrelated with Dayrel Billingsley and his heroin distribution network.

Grant frequently spoke to Dayrel Billingsley over his telephone. They discussed their businesses, contacts with sources of supply, mutual customers, and so forth. These conversations led to a court-authorized wiretap of the telephone of Dayrel Billingsley from June 10, 2004, through August 27th, 2004. In the course of monitoring Billingsley's cellular telephone, agents learned that Billingsley was bringing heroin from New York to Columbus, Ohio for distribution. Billingsley fronted this heroin to various individuals in the Columbus, Ohio area, who would, in turn, distribute the heroin to their customers. Those distributing heroin for Billingsley during the summer of 2004 included Ontario Boyd, Anthony Clifton, Damon Deveaux, an individual identified as Dreddie and others.

Calls intercepted on August 25, 2004 revealed that Billingsley had a courier he referred to as Uncle Timmy, who would transport heroin to him from New York to Columbus. The next day (August 26, 2004), after Uncle Timmy arrived, Billingsley met with several of his distributors, including Boyd,

Clifton and Deveaux. Shortly after these meetings, search warrants were conducted on the residence of Billingsley and Boyd. 49 grams of heroin were found at Boyd's residence and 99.7 grams of heroin were found at Billingsley's residence. The heroin at both locations was packaged in the same way.

In addition to the heroin at Billingsley's residence, agents found $15,980 in U.S. currency and a .38 caliber Herman Weirauch revolver, serial number 1536587, with ammunition. This particular revolver was manufactured outside the State of Ohio. On or about October 10, 1993, in Franklin County Court of Common Pleas, (Case Number 92CR-03-1473), Billingsley was convicted of a felony, that is aggravated trafficking in drugs. Thus, as a convicted felon, Billingsley was prohibited from possessing a firearm on August 26 of 2004.

Following the searches in August 2004, a number of individuals – both distributors and users – were arrested and/or interviewed. A number of these individuals agreed to cooperate and testify about their own involvement and the involvement of others in heroin trafficking. Many of these cooperating witnesses identified the defendant, Dayrel Billingsley, as an individual who had distributed significant quantities of heroin, crack cocaine and marijuana in the Columbus, Ohio area since the early 1990's.

Cooperating witnesses have indicated over the years that Billingsley recruited a number of individuals from New York to distribute heroin for him in the Columbus, Ohio area. Those individuals included Allen Robinson, Kelvis Avila, Kareem Wheeler, Nathaniel Sarvis, Tyleek Fulcher and others. In addition, Billingsley had recruited others already in the Columbus area to sell heroin which he fronted to them. Those individuals included John Long, Kevin Neal, Rochelle Sparks, Dontario Boyd, Damon Deveaux, Dreddie and others.

In addition to these distributors, Billingsley employed individuals to assist him in the distribution of heroin by acting as couriers to transport heroin and/or money to and from New York. Those individuals included Uncle Timmy and a former girlfriend, Shavon Whiteside.

Billingsley's sources of supply for heroin included the same people with whom Grant and Sweeting dealt – Arie Colbert, aka Forty, and two individuals from the Dominican Republic, Cribby and Homey.

Investigating agents have documented that Dayrel Billingsley obtained a substantial amount of cash from the sale of heroin, crack cocaine and marijuana from 1995 until his arrest in August, 2004. Numerous conversations were intercepted between Grant and his associate, Dayrel Billingsley, about their respective heroin businesses, the monies they earned and how to invest them to make them appear they were derived from legitimate sources of income.

Billingsley attempted to conceal his drug proceeds in a number of different ways. He used other persons to collect monies from his customers. He caused false documentation to be made to make it appear his monies came from legitimate sources of income. He utilized other people, such as his brother Richard and his girlfriends, Shavon Whiteside and Tomara Herring, to wire monies to New York to pay his suppliers of heroin. He invested his drug proceeds in real estate, a number of which he placed in the name of his mother. He then obtained loans on those properties in an attempt to further conceal the source of his illegal income.

In conclusion, the evidence developed through the wiretap, surveillance, undercover purchases, traffic stops, search warrants, financial investigation, and information provided by cooperating witnesses, establishes that Dayrel Billingsley operated a continuing criminal enterprise from at least 1995 through August 2004, from which he generated substantial income and resources from the sale of heroin.

Over the years, Billingsley distributed in excess of three kilograms of heroin in the Columbus, Ohio area. As a part of this enterprise, Billingsley supervised at least five people – including dontario Boyd, Anthony Clifton, Kareem Wheeler, Tyleek Fulcher, Nathaniel Sarvis, Shavon Whiteside, Uncle Timmy, Allen Robinson and others at various times during this operation of this enterprise – who were involved with him in

> the distribution of heroin, possession of heroin for distribution and transporting heroin from New York to Columbus for distribution.
>
> This evidence further establishes that Billingsley conspired with other individuals to conceal the monies derived from the sale of heroin and to utilize his drug proceeds to further promote his drug trafficking activities. The evidence also establishes that Billingsley possessed a firearm after he had been convicted of a felony.

*Id.*, at 30-36. Petitioner agreed with those facts and admitted his guilt. *Id.*, at 38-41. At sentencing, he indicated that he had reviewed the Presentence Investigation Report with his attorney and understood all of the issues involved. He had no questions. *Sentencing Transcript,* at 203. The Court calculated a total offense level of 39 under the United States Sentencing Guidelines (noting defense counsel's objection to the two level increase based on the firearm) and a criminal history category of IV, for a recommended sentence of 360 months to life incarceration, and a statutory minimum of twenty years. *Sentencing Transcript*, at 24-26. The Court granted the government's motion for downward departure under U.S.S.G. §5K1.1, reducing petitioner's offense level to 36, with a corresponding recommended sentencing range of 262 to 327 months. *Id.*, at 28; *see also* Doc. No. 38. The Court imposed an aggregate term of twenty-five years.[2] Doc. No. 41. When asked if he

---

[2] The Court stated:

> Mr. Billingsley, what I consider to be a big break in this case is that you're being offered a five-year reduction, from 30 years, and with the possibility that it's going to be even more than that in the future. When I first read the Government's motion for downward departure and realized what they were talking about, I almost fell off my chair. I've got to tell you, I almost fell off my chair. Given everything in this case that I know about

had anything to say, petitioner stated:

> I stand here, Your Honor, and I'll take full responsibility as a man for the things that I've done. It was selfish on my behalf. I probably didn't realize how many people that I would be hurting from the things that I was doing.
>
> ... I take responsibility for being a drug dealer, because I did sell drugs. I know better... I would like to apologize to my family, my friends, the kids, to the State of Ohio....

*Sentencing Transcript*, at 39-40.

When a criminal defendant pleads guilty, the plea must be entered in a knowing and voluntary manner in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988)(quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976).

Where a prisoner challenges his guilty plea on the basis that it was induced by an unkept promise, a court must determine whether the allegation, when viewed against the record of the plea hearing, is so palpably incredible, so patently frivolous or false, as to

---

the case, which is a considerable amount, I guess I believe you're being given quite a break[.]

*Sentencing Transcript,* at 31-32. As noted *supra*, on July 16, 2007, the Court reduced petitioner's sentence an additional seven years pursuant to the government's request under Rule 35 of the Federal Rules of Criminal Procedure. Doc. No. 80.

11

warrant a summary dismissal. *Blackledge v. Allison*, 431 U.S. 63, 76 (1977). In applying this standard, a court must indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id.* at 74.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 74.

When viewed against the record in this action, petitioner's allegations that he did not know the elements of the offenses charged, or that he did not agree to plead guilty to operating a continuing criminal enterprise, and to be held accountable for between three and ten kilograms of cocaine are wholly unworthy of credit. Likewise, petitioner's claim that his attorney promised that petitioner would be sentenced to twelve years incarceration fails to warrant relief.

> Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971). It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties. Furthermore, "a plea bargain itself is contractual in nature and 'subject to contract-law standards.'" *United States v. Krasn*, 614 F.2d 1229, 1233 (9th Cir. 1980), quoting *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979). To allow defendant to attempt to prove by affidavit

12

> that the agreement is otherwise than it appears, unambiguously, on a thorough record would violate established contract-law standards. The Court holds therefore that where Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court....

*Warner v. United States,* 975 F.2d 1207, 1212 (6th Cir. 1992).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d at 884. In order to obtain relief, a prisoner who challenges the entry of his guilty plea on the basis of counsel ineffectiveness must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here. The transcript of petitioner's guilty plea reflects that he was advised of the elements of the

offenses charged, as well as the potential sentence that he faced; he expressly denied any promises not reflected on the record. *Transcript, Guilty Plea*, at 8-10. He expressed satisfaction with his attorney's representation. *Id.*, at 8. Further,

> [i]t has long been settled as a general rule that where an adequate guilty plea hearing has been conducted, an erroneous prediction or assurance by defense counsel regarding the likely sentence does not constitute grounds for invalidating a guilty plea on grounds of ineffective assistance of counsel. *See Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir. 1972) (citing *Wellnitz v. Page*, 420 F.2d 935 (10th Cir. 1970)); *see also United States v. Marzgliano*, 588 F.2d 395, 399 n. 6 (3d Cir. 1978) (explaining different rule where allegation is that plea was based on misconduct or misrepresentation by defense counsel); *United States v. Valenciano*, 495 F.2d 585, 588 (3d Cir. 1974) (same). This rule has been reinforced with the advent of Guideline sentencing and the detailed procedures to be followed in conducting the Rule 11 colloquy at the guilty plea hearing. *See, e.g., United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) ("The mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement.... This is especially true under the new Sentencing Guidelines.") (quoting *United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir. 1989) ("[The Sentencing Guidelines] reinforce our earlier decisions on the issue. Under the Guidelines there will be many more detailed hearings regarding imposition of sentence.")).
>
> The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel. *See, e.g., United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) ("[A]n attorney's mere inaccurate prediction of sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (citation omitted); *Gonzalez v. United States*, 33 F.3d 1047, 1051-53 (9th Cir. 1994) ("The district court informed [defendant] of the maximum possible sentences

>and fines for the offenses to which he pleaded guilty. He responded affirmatively when asked if he was satisfied with [counsel]'s representation of him. As a result, [he] cannot claim he was prejudiced by [counsel]'s alleged gross error in calculating the sentencing guidelines range and likely sentence."); *Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990) ("[Defendant]'s attorney's inaccurate prediction of what sentence [he] would receive upon pleading guilty does not rise to the level of a gross mischaracterization of the likely outcome of his case, and thus does not constitute ineffective assistance of counsel.... Further, [defendant] suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court.") (citation omitted).

*Brown v. United States,* 75 F.Supp.2d 345, 355 (D. N.J. 1999).

Petitioner complains that the sentence suggested under the United States Sentencing Guidelines was improperly enhanced two points, for an applicable offense level of 36 pursuant to §2D1.1(b)(1), based on the firearm found in his house. *See Presentence Investigation Report,* at ¶71. Defense counsel objected to petitioner's recommended sentence on this basis, *see Presentence Investigation Report,* and petitioner raised this issue on direct appeal. The United States Court of Appeals for the Sixth Circuit rejected petitioner's argument. *See Return of Writ*, at 24; Doc. No. 70. Therefore, this Court will not now again consider that claim. *See DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)(citations omitted).

To the extent that petitioner alleges a misapplication of the United States Sentencing Guidelines, that claim should have been raised on direct appeal, but was not. Therefore, before this Court can consider such a claim in these proceedings, petitioner must establish

cause and actual prejudice. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). He has failed to do so. His request for a sentence reduction does not raise a claim of constitutional dimension and is not supported by the record.

Section 2255 authorizes relief where the sentence was imposed in violation of the Constitution or laws of the United States, or because the court lacked jurisdiction to impose the sentence, or because the sentence exceeded the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. §2255(a).

> To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

*Watson v. United States*, 165 F.3d 486 (6th Cir. 1999). Petitioner has failed to meet this standard here.

> [N]onconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver. Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system. Hence, when a federal statute, but not the Constitution, is the basis for postconviction attack, collateral relief from a defaulted claim of error is appropriate only where there has been fundamental unfairness, or what amounts to a breakdown of the trial process. *Reed*, 512 U.S. at ----, 114 S.Ct. at 2300.

16

> Accordingly, nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal. If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under §2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is being asserted is a violation of due process. Thus, as a practical matter, collateral relief does exist to vindicate rights of constitutional import that may lurk beneath otherwise garden-variety issues of statutory rights or guideline calculations.

*Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

> A sentence which is based on materially false information is not consistent with due process of law. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Fry*, 831 F.2d 664, 667 (6th Cir. 1987). In order to show a due process violation, a defendant must raise grave doubt as to the veracity of the information in the presentence report and show the Court relied on the material false information in determining the sentence. *United States v. Fry*, 831 F.2d at 667; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984), *cert. denied*, 469 U.S. 1196 (1985).

*Tribble v. United States*, 2008 WL 1859880 (E.D. Tenn. April 23, 2008). Petitioner has failed to establish "grave doubt" about the veracity of the information in the Presentence Investigation Report. *See id.* He contends that his total offense level should have been calculated at 37 – rather than the lower level of 36 on which his sentence was ultimately based – and he does not indicate in what manner his offense level was improperly calculated, aside from the two point enhancement for the firearm, which issue has already

17

been resolved by the Court of Appeals. Further, although petitioner contends that his prior criminal history score was improperly calculated, he does not suggest, nor does the record reflect, any basis on which to discount any of his prior criminal convictions in these proceedings.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

August 10, 2009                                     s/Norah McCann King
                                                    Norah McCann King
                                                    United States Magistrate Judge